UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-24023-Civ-TORRES

SAMUEL SCHULTZ,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
D/B/A AZAMARA CLUB CRUISES,

    Defendant.

_____/

**ORDER ON DEFENDANT'S *DAUBERT* MOTIONS**

This matter is before the Court on Royal Caribbean's ("Defendant" or "Royal Caribbean") *Daubert* motions to exclude Samuel Schultz's ("Plaintiff") experts, Dr. Nicholas Valenzia ("Dr. Valenzia"), Dr. Veronique Dalli ("Dr. Dalli"), and Dr. Lawrence Amsel ("Dr. Amsel"). [D.E. 87, 88]. Plaintiff responded to Defendant's motions on March 20, 2020 [D.E. 102, 103] to which Defendant replied on April 3, 2020. [D.E. 106, 107]. Therefore, Defendant's motions are now ripe for disposition. After careful review of the motions, responses, replies, relevant authorities, and for the reasons discussed below, Defendant's motions are **GRANTED in part** and **DENIED in part**.[1]

---

[1] On June 18, 2019, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [D.E. 27].

1

## I.  BACKGROUND

Plaintiff filed this action on October 1, 2018 [D.E. 1] with a two-count complaint alleging that Defendant[2] violated Title I of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101 *et. seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01.  Plaintiff, a thirty-three year old Wisconsin resident and U.S. citizen, is a singer who applied for employment as part of an opera program onboard the Azamara *Journey*.  The vessel was scheduled to embark on a fourteen-week voyage from Singapore to Stockholm on March 25, 2018 to June 29, 2018.  Defendant gave Plaintiff a job offer with a condition that Plaintiff successfully completes a pre-employment medical examination ("PEME") under the guidelines of the International Labour Organization ("ILO").[3]

Defendant arranged Plaintiff's PEME with a medical vendor and Plaintiff's examination took place in New York City.  The examining physician completed a form noting that Plaintiff was fit for duty at sea despite a history of depression and anxiety.  However, the physician also included a note that Plaintiff needed psychiatric clearance.  A reviewing doctor, a physician at Broward Health, agreed with that assessment and recommended that Plaintiff undergo a psychiatric evaluation.  Defendant then informed Plaintiff that he needed to obtain a

---

[2]   Defendant is a Liberian corporation headquartered in Miami that operates a global cruise vacation company.  Defendant employs approximately 70,000 crewmembers from more than 125 countries.

[3]   While Plaintiff's job duties were to be performed, for the most part, onboard a foreign-flag vessel, his recruitment and rehearsals occurred entirely in the U.S.

psychiatric evaluation that would address his history of depression, his current mental status, and his fitness for duty at sea.

To comply with this request, Plaintiff arranged a video session with his former treating psychiatrist, Dr. Gerber. Dr. Gerber wrote a letter, following the session, that Plaintiff was mentally fit for duty at sea. Dr. Gerber also stated that, although Plaintiff suffered from major depression since the age of 9 and survived a prior suicide attempt[4], Plaintiff had been in remission with the help of medication and psychotherapy. Dr. Gerber found that that there was little to no risk of harm to Plaintiff or others and that the risk of suicidal ideation was low.

Defendant's chief medical consultant, Dr. Shore, then reviewed Plaintiff's medical file in March 2018.[5] This included a review of Plaintiff's disclosures on his medical forms and Dr. Gerber's letter. Based on this information, Dr. Shore concluded that Plaintiff was *not* fit for duty at sea under the applicable ILO guidelines because of Plaintiff's history of major depression. More specifically, Dr. Shore found that Plaintiff's depression was persistent or reoccurring within the meaning of the ILO guidelines because Plaintiff continued to receive treatment for depression in the form of psychotherapy and medication. Dr. Shore also determined that he could not exclude the possibility that Plaintiff's major depression would reoccur if Plaintiff were on a cruise ship for an extended period without access to

---

[4] In 2011, Plaintiff attempted to commit suicide following a rape that he suffered the year prior.

[5] After reviewing Plaintiff's medical file, Dr. Shore never examined or spoke to Plaintiff before rendering a decision on Plaintiff's ability to work at sea.

medical services. Because Defendant withdrew the offer of employment, Plaintiff filed this action seeking relief under the ADA and the FCRA.

## *II. APPLICABLE PRINCIPLES AND LAW*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[6] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

---

6    Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

4

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique;

> and (4) whether the technique is generally accepted in the scientific community.  Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted).  The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate."  *Daubert*, 509 U.S. at 594-95.  It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'"  *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence."  *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing

6

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

#### A. *Defendant's Motion to Exclude Drs. Valenzia and Dalli [D.E. 87]*

We begin with Defendant's motion to exclude the report of Plaintiff's experts, Dr. Valenzia and Dr. Dalli.[7] Plaintiff hired these experts to answer the question of "[w]hether [Defendant's] hiring of the [P]laintiff for a position of performer aboard its Maltese-flagged cruise ship would have caused [Defendant] to violate Maltese law." [DE. 87 at 2]. Defendant argues that these experts violated *Daubert* and Federal Rule of Evidence 44.1 because Plaintiff tasked them with developing a legal conclusion (i.e. whether hiring Plaintiff violated Maltese law) and that this is no different than a lawyer's closing argument. Defendant also claims that Plaintiff's experts violated *Daubert* because (1) they have no specialized knowledge or expertise to opine on Defendant's hiring and medical approval process, and (2) their report includes improper legal opinions on whether Defendant's medical approval process contains irregularities. Because neither of these is allowed under *Daubert*,

---

[7] These experts work together in a Maltese law firm.

Defendant concludes that their expert report – except for the section that outlines the relevant legal principles – must be stricken.

The applicability of foreign law is an issue to be determined by a district court. *See* Charles Alan Wright et al., Proof of Foreign Law, 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed. 2016) (quoted in *Siswanto v. Airbus Americas, Inc.*, 2016 WL 7178460, at *4 (N.D. Ill. Dec. 9, 2016)). If the court determines a need to apply and interpret foreign law, it may accept guidance from an expert on foreign law. *See Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 459 (3d Cir. 1999). The propriety of presenting an expert on foreign law is specifically recognized in the Federal Rules of Evidence:

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. Thus, foreign experts may be called to assist a district court in interpreting foreign law. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 2005 WL 5955701, at *7 (S.D. Fla. Aug. 17, 2005) (denying motion to exclude expert on Mexican law).

Defendant challenges, in part, the admissibility of Plaintiff's experts because they run afoul of *Daubert* and Federal Rule of Evidence 702. "*Daubert,* however, does not apply in these circumstances. That holding governs the admissibility of expert testimony introduced to help a jury understand a piece of evidence or determine a fact at issue: it does not govern the admissibility of expert testimony

8

introduced to assist a court in making decisions regarding foreign law." *Id.*[8] Stated differently, "Rule 44.1 of the Federal Rules of Civil Procedure removes admissibility precepts from foreign law determinations," meaning there is no need for Plaintiff's experts to meet the "special qualifications" normally required of factual experts. *Adria MM Prods., Ltd. v. Worldwide Entm't Grp., Inc.*, 2018 WL 6505914, at *2 (S.D. Fla. Aug. 27, 2018) (citing *Siswanto v. Airbus Americas, Inc.*, 2016 WL 7178460, at *4 (N.D. Ill. Dec. 9, 2016) (denying motion to exclude an expert and noting court's ability to determine what weight to afford witness' opinions on foreign law)). Courts in this district have been consistent on this point and have repeatedly found that a court may consider a foreign expert report "under Rule 44.1, notwithstanding a finding that the report would not satisfy Fed. R. Evid. 702 or *Daubert*." *Adria MM Prods., Ltd*, 2018 WL 6505914, at *2 (citation omitted). We therefore need not address whether Dr. Valenzia and Dr. Dalli qualify as experts under *Daubert*. *See Grupo Televisa, S.A.*, 2005 WL 5955701, at *7 ("The Court . . . need not address whether Mr. Loperena qualifies as an expert under the criteria set forth in *Daubert*.").

Turning to whether Plaintiff's experts run afoul of Federal Rule of Evidence 44.1, Defendant's arguments are unavailing. Defendant claims that the Court should exclude portions of the expert report because Dr. Valenzia and Dr. Dalli have no specialized knowledge or expertise on Defendant's hiring and medical practices

---

[8] That is the same in this case because Plaintiff does not seek to admit these opinions to a jury.

9

except for the information that Plaintiff's counsel provided to them.[9] Defendant fails to reference, however, any part of Rule 44.1 that imposes this requirement as a basis for exclusion, especially since a determination on foreign law is generally a question for a judge to decide – not a jury. Indeed, "[t]he purpose of Rule 44.1 is to provide district courts faced with 'the peculiar nature of the issue of foreign law' the flexibility necessary to examine and weigh materials regarding foreign law as they see fit in light of the facts and circumstances." *Castillo v. Cessna Aircraft Co.*, 2010 WL 11505745, at *3 (S.D. Fla. July 22, 2010) (quoting Fed. R. Evid. 44.1). This flexibility allows a court "to reexamine and amplify material that has been presented by counsel in partisan fashion or in insufficient detail." *Id.* Because Rule 44.1 gives a court considerable discretion to allow a foreign expert to provide background information that may ordinarily violate *Daubert* so that a court may understand the nuances of foreign law, we decline to exclude Plaintiff's expert report for these reasons.

Defendant's final argument is that the expert report should be stricken under Rule 44.1 because, after Plaintiff's experts explained the substance of Maltese law, they incorrectly applied the law to the facts of this case. Defendant claims that the expert report makes factual determinations on whether Royal Caribbean violated Maltese law and that this is not allowed because it merely instructs the trier of fact on what conclusion to reach. This argument is unpersuasive because, as stated earlier, Plaintiff does not seek to introduce his expert report to the jury. Plaintiff

---

[9] Defendant does not question Plaintiff's experts on their expertise of Maltese law.

merely seeks to inform the Court on whether Defendant's hiring and medical practices would have violated Maltese law. Defendant's contention also falls short because the Court need not adopt any application or conclusion reached in the expert report. The expert report is merely a guide on how to apply Maltese law and – irrespective of its potential shortfalls – it is helpful in determining the content of Maltese law and how it might be applied. Accordingly, there is no reason to strike any portion of Dr. Valenzia's and Dr. Dalli's expert report for the Court's consideration and, as a result, Defendant's motion is **DENIED**.

### B.     *Defendant's Motion to Exclude Dr. Amsel [D.E. 88]*

Defendant's second motion seeks to exclude Dr. Amsel who is a Board Certified psychiatrist with expertise in the assessment of suicide risk. Dr. Amsel serves as an Assistant Professor of Clinical Psychiatry at Columbia University, as a research psychiatrist at New York State Psychiatric Institute, and as a psychiatrist at New York Presbyterian Hospital.[10] After reviewing the evidence in the record, Dr. Amsel opined (1) that Plaintiff "had no psychiatric limitation in regard to employment on [Defendant's] ship,"[D.E. 88-1 at 4] (2) that Dr. Gerber's letter "should have led to [Plaintiff's] medical evaluation being completed in [Plaintiff's] favor," *id*. at 5, and that "[t]his [job] was a good opportunity for [Plaintiff], and he was unjustly deprived of it." *Id*. at 10. Defendant suggests that Dr. Amsel made several missteps in his expert report because his methodology is unreliable and his opinions are unhelpful. We consider each argument in turn.

---

[10]     Although Defendant did not challenge Dr. Amsel's qualifications, we include a brief background to inform the analysis that follows.

11

### *1. Reliability*

First, Defendant claims that Dr. Amsel's methodology is unreliable because he failed to assess Plaintiff's medical records during the relevant time period and neglected to perform any independent tests to corroborate his findings. Defendant also complains that Dr. Amsel failed to even meet with Plaintiff and that, if he had done so, he would have realized that Plaintiff severed ties with his treating psychiatrist, Dr. Gerber. Defendant suggests that the cessation in Plaintiff's psychiatric care and the occurrence of several major life events (i.e. Plaintiff starting a new job and moving to a new city) should have been considered when determining Plaintiff's well being. Making matters worse, Defendant alleges that Dr. Amsel undermined his own opinion because he stated that a psychiatric evaluation is critical in evaluating a person's mental health but then failed to use any methodology for his own assessment. Instead, Dr. Amsel chose to rely almost entirely on Dr. Gerber's opinions and other statistical data to support a conclusion that Plaintiff was medically fit for duty at sea. Because Dr. Amsel's opinion is devoid of any reliable methodology, Defendant concludes that it cannot stand.

"The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically

valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

After an independent review of Dr. Amsel's expert report, we agree that there are viable reasons that his opinions might be subject to criticism. However, it is not for the Court, on a *Daubert* motion, to determine the credibility and persuasiveness of Dr. Amsel's opinions. All of the defects that Defendant identifies merely affect the weight of Dr. Amsel's opinions, as opposed to their admissibility. *See, e.g.*, *Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, 2014 WL 2625297, at *3 (M.D. Fla. June 12, 2014) ("PEI [] argues that Dr. Wood improperly weighted the data, included improper questions, and failed to employ proper quality controls. These criticisms likewise go to the weight of her opinions, not their admissibility.").

Defendant takes issue, for instance, with Dr. Amsel's decision to omit any consideration of Plaintiff's move to a new city or other major life events in Plaintiff's life. But, there is no evidence that the failure to consider these factors renders Dr. Amsel's opinion unreliable.[11] Defendant then alleges that Dr. Amsel was unaware that Plaintiff ceased his psychiatric appointments with Dr. Gerber. While that might be true, that goes to the weight that a jury should assign to Dr. Amsel's

---

[11] Defendant's argument appears meritless because there is evidence in Dr. Amsel's expert report that he was aware of Plaintiff's major life events.

13

opinion – not whether the underlying methodology is unreliable. Not to be deterred, Defendant claims that the failure to physically examine Plaintiff is a proper basis to exclude Dr. Amsel's opinion. This argument falls short for many of the same reasons because Defendant fails to identify what evidence Dr. Amsel should have considered and how it might have changed his assessment. And even if Defendant had made that showing, it would have merely provided a critique for the jury to consider because Dr. Amsel relied on Plaintiff's medical files when determining whether Plaintiff had a substantial risk of suicide. Because "a physician need not necessarily examine a patient, interview that patient, or speak with the patient's treating physician(s) in order to render opinions regarding diagnosis, prognosis, course of treatment and perhaps even causation," Dr. Amsel's decision to rely primarily on medical records is not fatal. *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216–17 (S.D. Fla. 2016).

Defendant's last argument, as to the reliability of Dr. Amsel's opinion, is that Dr. Amsel relied too heavily on "another doctor's letter and generalized statistical data to support his conclusion that [Plaintiff] was medically fit for duty." [D.E. 88 at 8]. But, this is inaccurate because Dr. Amsel consulted the entire record available to Royal Caribbean including Plaintiff's psychiatric history and the medical records from Dr. Gerber and Dr. Balick. Dr. Amsel then used his own methodology to assess Plaintiff's prior suicide attempt, Plaintiff's medications, and other studies related to mental health. While Defendant may disagree entirely with how Dr. Amsel reached his conclusions, that does not mean that his opinions are

unreliable under *Daubert*. If Defendant wants to undermine Dr. Amsel's opinions, it will have ample opportunity to do so at trial. Accordingly, Defendant's motion to exclude Dr. Amsel's opinions as unreliable is **DENIED**.

### 2. *Helpfulness*

Second, Defendant seeks to exclude limited portions of Dr. Amsel's expert report because they will be unhelpful to the trier of fact. Defendant takes issue with Dr. Amsel's opinion that Plaintiff's medical evaluation should have been returned in his favor and that Defendant should have hired Plaintiff because he was medically fit. More specifically, Defendant argues that Dr. Amsel's expert report includes impermissible legal conclusions because he opines that Dr. Gerber's letter "satisfies the ILO Guidelines that are supposed to define the clearance process," [D.E. 88-1 at 5] and that Defendant's job opening was a "good opportunity for [Plaintiff], and he was unjustly deprived of it." *Id*. at 10. Defendant claims that these opinions are not grounded in any scientific, technical, or other specialized knowledge and that they will not assist the jury in understanding Plaintiff's emotional or mental health condition. For these reasons, Defendant concludes that these opinions should be stricken.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). While "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate

15

legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre,* 308 F. App'x at 383). The Eleventh Circuit has made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

Here, Defendant's arguments are well taken because a small portion of Dr. Amsel's expert report includes opinions that are *not* beyond the understanding of an average layperson. Statements that Defendant's job offer was a "good opportunity," and that Defendant "unjustly deprived [him] of it" is a determination that a jury can make entirely on its own. [D.E. 88-1 at 10]. While the deprivation of a job opportunity does not, by itself, rise to a legal conclusion, it falls outside the scope of expert testimony and it presents a risk of telling a jury what result it should reach as to Plaintiff's ADA and FCRA claims. *See Montgomery*, 898 F.2d at 1541 ("An expert may not . . . merely tell the jury what result to reach.") (citing Fed. R. Evid. 704).

The same is true with respect to Dr. Amsel's statement that Dr. Gerber's letter satisfies the ILO guidelines. "While [a]n expert may testify as to his opinion on an ultimate issue of fact," Dr. Amsel's opinion runs the risk of instructing the jury that the ILO guidelines were satisfied and that Defendant had no justifiable reason to revoke Plaintiff's job offer. *Id*. (citing Fed. R. Evid. 704). This opinion leads the jury too close to the water's edge of concluding that Defendant unlawfully discriminated against Plaintiff. Plaintiff suggests that a jury would benefit from

16

Dr. Amsel's opinion in determining the application of the ILO guidelines to Defendant's conduct. But, if a jury finds Dr. Amsel's testimony and expert report to be persuasive and credible, this is a determination that a jury can make on its own without the risk of instructing jurors on what conclusion to reach. Accordingly, Defendant's motion to exclude a limited portion of Dr. Amsel's expert report as unhelpful is **GRANTED** and, in all other respects, Defendant's motion is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's *Daubert* motions [D.E. 87, 88] are **GRANTED in part** and **DENIED in part**:

A.  Defendant's motion to exclude the expert reports of Dr. Valenzia and Dr. Dalli is **DENIED**.

B.  Defendant's *Daubert* motion to exclude a limited portion of Dr. Amsel's medical opinions as unhelpful is **GRANTED**. In all other respects, Defendant's motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of June, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge