UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CIV-24023-TORRES

SAMUEL SCHULTZ,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD., etc.,

     Defendant.

_____/

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>**

David M. DeMaio
Gregory R. Hawran
Kelly M. Peña
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
Counsel for Defendant
Two Datran Center
9130 South Dadeland Boulevard, Suite 1625
Miami, Florida 33156
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletree.com
gregory.hawran@ogletree.com
kelly.pena@ogletree.com

## INTRODUCTION

Pursuant to S.D. Fla. L.R. 7.3(a), Defendant Royal Caribbean Cruises Ltd. ("RCCL") hereby submits this Memorandum of Law opposing Plaintiff's Motion for Attorneys' Fees (ECF 192-196). Plaintiff seeks a fee award (for both of his law firms) of $2,114,190.75 and an additional $76,174.67 in expenses, for a staggering total of $2,190,365.42 in a single-plaintiff employment-discrimination case that did not go to trial.[1] The award sought is more than seven times the Plaintiff's recovery. As discussed below, the Court should reduce substantially Plaintiff's application because the hourly rates requested are unreasonable, the hours for which Plaintiff seeks compensation are excessive, rife with redundancies, and otherwise unsupportable, and the fee award is disproportionate to the recovery made. Similarly, most of the non-taxable expenses Plaintiff seeks are undocumented, unreasonable or have not been shown to be necessary to litigate the case. As discussed more fully below, RCCL suggests that the total fee award claimed be reduced to $639,347.60 or less, and the award for non-taxable expenses be reduced to $3,849.38.

## APPLICABLE PRINCIPLES AND LAW

The determination of reasonable attorneys' fees and costs is "left to the sound discretion of the district court." *Barrios v. Southern & Caribbean Agencies, Inc.*, No. 18-21550-CV-Williams/Torres, 2020 WL 7481869, *1 (S.D. Fla. Feb. 3, 2020) (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988)), *Report & Recommendation adopted*, 2020 WL 7481965 (S.D. Fla. Feb. 25, 2020). The fee applicant bears the burden of producing satisfactory evidence demonstrating entitlement to the fees and costs requested. *Barrios*, 2020 WL 7481869 at *1. "The Court is itself an expert on the question of attorneys' fees, and [it] may consider [its] own knowledge and experience concerning reasonable and proper fees." *Id.*

Courts in the Eleventh Circuit use the "lodestar" method for determining a reasonable fee award. "The lodestar approach requires the court to multiply the court's determination of a reasonable hourly rate with the number of hours reasonably expended on the litigation." *Id.* at *2 (citing *Norman*, 836 F.2d at 1299). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quotation omitted); *Barrios*, 2020 WL 7481869 at *3. When a district court, in conducting a

---

[1] Plaintiff has also submitted a Bill of Costs seeking an additional $29,119.09 in taxable costs pursuant to 28 U.S.C. § 1920 (ECF 191). RCCL is filing a separate response to the Bill of Costs contemporaneously with this Memorandum.

"lodestar" analysis, finds that the number of hours claimed is excessive, the court has two options: it may conduct an hour-by-hour analysis of the time entries or it may forego an hour-by-hour review in favor of making an across-the-board cut. *Bivins*, 548 F.3d at 1350; *Gustave v. SBE ENT Holdings, LLC*, No. 19-23961-CIV-Scola/Torres, 2021 WL 4244862, *6 (S.D. Fla. Sept. 7, 2021), *Report & Recommendation adopted*, 2021 WL 4244964 (S.D. Fla. Sept. 17, 2021).

## ARGUMENT

### A.  Plaintiff's Requested Hourly Rates Are Not Reasonable

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *Barrios*, 2020 WL 7481869 at *2. The relevant market for purposes of determining a reasonable hourly rate is "the place where the case is filed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Gustave*, 2021 WL 4244862 at *3. "Even if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CV-Moore/Torres, 2011 WL 9364952, *9 (S.D. Fla. July 15, 2011) (internal quote omitted).[2]

The movant bears the burden of submitting to the court evidence sufficient to establish that the requested rates reflect accurately the prevailing market rates. *Gustave*, 2021 WL 4244862 at *3. Ultimately, the Court "is itself an expert … and may consider its own knowledge … concerning reasonable … fees … with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303; *Gustave*, 2021 WL 4244862 at *3 (same); *Richburg v. Carmel at the Cal. Club Prop. Owners Ass'n*, No. 18-21944-CV-Williams/Torres, 2019 WL 2255586, *2 (S.D. Fla. May 1, 2019) (same).

---

[2] In determining a "reasonable" hourly rate the "district courts may, but are not required to, consider" all the factors enumerated in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012). The permissive language is because "many [of the factors] usually are subsumed within the … calculation of hours reasonably expended[.]" *Id.*; *see Gustave*, 2021 WL 4244862 at *3. The 12 *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. *See Bivins*, 548 F.3d at 1350 n.2.

**(1) <u>Outten & Golden's rates far exceed the prevailing South Florida rates</u>**

Outten & Golden ("OG") is requesting their New York City hourly rates, which far exceed the prevailing rates in South Florida. *See Robert Turk Aff.* ¶¶ 20-28, *Ex. 1* (surveying several recent cases). This Court held only three months ago in *Gustave* that the prevailing rates in this District for an employment-discrimination case are no greater than $450 per hour. *Gustave*, 2021 WL 4244862 at *4. This Court reduced the hourly rates requested in that case to $450 (and less for more junior attorneys) notwithstanding that Plaintiff's counsel "devoted substantial time and resources to litigating [the] case," included "senior-level attorneys with almost 3 decades of experience[,]" and the Court did not dispute plaintiff's assertion that the case involved "great difficulty and presented novel questions of law." *Id.* at *4 (citing cases with similar awards). Importantly, this Court wrote, "*even assuming that the lawyers here are the best in their field and that this matter presents unique challenges* [,] the rates requested are too high to comparable cases." *Id.* (emphasis added). *See Turk Aff.* ¶ 20, *Ex. 1* (surveying recent South Florida cases where the hourly fee awards were mostly $400 or substantially less).

Plaintiff relies on *Prison Legal News v. Inch*, 411 F. Supp.3d 1198 (N.D. Fla. 2019), which awarded extraordinary hourly rates of $900, $825, and $700 to three very experienced attorneys, *id.* at 1207-08; but *Prison Legal News* is an outlier. The case is inconsistent with the prevailing rates awarded in this District for labor and employment cases. *Turk Aff.* ¶¶ 22-23, *Ex. 1*.[3] *Prison Legal News* is also inconsistent with this Court's recent *Gustave* decision and the cases cited in *Gustave. See also Tissone v. Osco Food Servs., LLC*, No. 19-cv-61358-Smith/Valle, 2021 WL 1529915, *3-5 (S.D. Fla. Feb. 10, 2021) (surveying recent decisions in South Florida awarding hourly rates ranging from $375 to $400 for attorneys with 20 to 39 years of experience); *Barrios*, 2020 WL 7481869 at *2 (finding hourly rates of $375 to $400 for partner-level work reasonable). Apart from *Prison Legal News*, Plaintiff has failed to identify any other labor and employment or civil rights case from South Florida approving such stratospheric rates.[4]

---

[3] Moreover, as discussed by Mr. Turk, the fee expert in *Prison Legal News*, a partner at the Gunster Law Firm, based his hourly rate opinion on his own hourly billing rate of $760 and the "regular rates" of his partners at Gunster; but those same partners had their $700-plus hourly rates slashed to $500 in an employment case a year earlier. *Turk Aff.* ¶¶ 22-23, *Ex. 1*.

[4] The other decisions Plaintiff relies on, *see Pl. Memo* 17 (ECF 192), did not involve employment cases but instead involved patent, intellectual property, consumer class action, and comparable

**(2) Scott Wagner's requested rates exceed the prevailing South Florida rates**

Scott Wagner & Associates ("SWA") is also seeking rates that exceed the prevailing rates in the District based on their skills and experience. Indeed, the SWA attorneys are each seeking rates that *exceed* their normal hourly rates in this District. Lindsey Wagner is seeking $475 per hour but ordinarily charges an hourly rate of $400 to $450; Cathleen Scott is seeking $600 but ordinarily bills at an hourly rate of $450; Anne Tomasello is seeking $350 but ordinarily bills at $300 per hour. *See Lindsey Wagner Fee Aff.* ¶¶ 8-9, 24-25, 32-33 (ECF 193).

The SWA attorneys point to the alleged complexities of this case to justify seeking a premium over their customary rates. *Wagner Aff.* ¶¶ 9, 25, 33 (ECF 193). The SWA attorneys, however, cannot have it both ways. SWA admits in the fee application that OG's engagement was necessary because of the alleged magnitude and complexities of this case. *Id.* ¶ 11. If true, then SWA should not be permitted to command premium rates or higher than prevailing rates for work they purportedly could not handle without the assistance of another firm.[5] Mr. Turk believes that the prevailing market rates for Ms. Wagner, Ms. Scott, and Ms. Tomasello based on their experience levels and skills are $360, $450, and $300 respectfully. *Turk Aff.* ¶¶ 18, 24, 27-28, 29, Ex. 1.[6]

**(3) RCCL's proposed hourly rates**

RCCL is proposing that the Court use hourly rates—as illustrated in the *Timekeeper Rate Table* attached to this Memorandum as *Exhibit 3*—that are consistent with the prevailing market rates and the rates Mr. Turk opines would be the prevailing market rates for each of Plaintiff's timekeepers. *See Turk* Aff. ¶ 29. Notably, the hourly rates RCCL and Mr. Turk are proposing are

---

disciplines. Similarly, Plaintiff's fee expert, William McCormick, did not identify *any* decisions from South Florida justifying the rates requested by the Plaintiff. *See McCormick Decl.* (ECF 195).

[5] Furthermore, although the SWA attorneys write in very broad, generalized strokes about the work they performed for Plaintiff on this case, *see Wagner Aff.* ¶¶ 17, 26, 34 (ECF 193), they fail to articulate specifically what they did on this case that was *distinct* from the work done (or that could have been done) by the numerous OG lawyers, such that it would justify a premium over the prevailing rates in this market.

[6] Moreover, unlike Mr. Turk, Plaintiff's fee expert, Mr. McCormick, does not appear to be a regular practitioner of labor and employment law. In his Declaration (ECF 195), Mr. McCormick does not purport to practice employment law or have a history of doing so. He does not appear to be Board Certified in labor and employment law, nor does he appear to be a member of the Labor & Employment sections of the Florida Bar, Federal Bar, or American Bar Association.

also consistent with the hourly rates that defense counsel charged RCCL to defend this case. *See Decl. of David M. DeMaio* ¶¶ 4, 6, *Ex.* 2.

### (4)   The *Johnson* factors support RCCL's suggested rates.

Consideration of the relevant factors from *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), also supports RCCL's proposed rates. First, the issues involved in this single-plaintiff, employment-discrimination case were not so novel or difficult that they required "Plaintiff to hire ten lawyers, including seven from New York City." *Turk Aff.* ¶¶ 14-15, Ex. 1 (opining that the issues were not so unique or novel to justify the hourly rates sought be Plaintiff); *see Gustave*, 2021 WL 4244862 at *4 ("even assuming that the lawyers here are the best in their field and that this matter presents unique challenges [,] the rates requested are too high to comparable cases"). While the central issue in the case—whether the ADA applies to foreign-flag vessels—has not been litigated often, it is neither unique nor especially difficult. Indeed, there are several Supreme Court cases dealing with the question of when a U.S. law may be applied to regulate foreign-flag vessels, and *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005), dealt directly with that question in the context of the ADA. Apart from navigating the "internal affairs, clear statement rule," which is hardly "novel," the remaining issues in the case were many of the same issues attorneys face in a typical ADA case.

Second, the skill required to perform the legal service did not require the retention of out-side-market counsel charging New York rates. *Turk Aff.* ¶¶ 16-17. This was not a case, for example, "where use of an attorney from a higher-rate market who had extensive prior experience" with the subject matter "could be justified because of efficiencies resulting from that prior experience." *Barnes*, 168 F.3d at 438. Indeed, the opposite is true. There is no evidence that any of the Plaintiff's attorneys had prior experience with the underlying issue concerning application of the "clear statement rule." Consequently, they spent an enormous number of hours researching this issue. Furthermore, this Court judicially knows from its own experience that there are plenty of lawyers and law firms in South Florida with the requisite skills and expertise to have handled this case. *Barnes*, 168 F.3d at 438 (taking judicial notice of the sufficient number of attorneys in Atlanta with expertise obviating the need to hire New York counsel); *see Turk Aff.* ¶¶ 16, 25. Plaintiff has failed to carry his "burden of showing there were no attorneys" in South Florida "who were willing and able to handle [his] claims." *Barnes*, 168 F.3d at 437. Indeed, Plaintiff has failed to present any evidence that he even sought counsel in South Florida before retaining OG.

Third, Plaintiff has provided no reliable, competent evidence that either OG or SWA were precluded from doing other work by taking this case. That this was a contingency case is also largely immaterial because OG and SWA frequently take plaintiffs' cases on a contingency basis. Similarly, Plaintiff has provided no evidence that this case was "undesirable" or that any law firms declined to represent him because the case was undesirable or too difficult.

Fourth, for the reasons already discussed above and in Mr. Turk's affidavit, the customary fee in the locality and awards in similar cases strongly favor the rates suggested by RCCL and Mr. Turk. While occasional "outlier" cases awarding higher rates can be found, they are not representative of the majority of cases. Ultimately, the issue is the "prevailing" market rate, not identifying the high-rate outlier in the group.

Finally, Plaintiff attempts to justify the higher rates by the results obtained. While $300,000 is a substantial sum of money, it pales in comparison to what Plaintiff held out for until the very end. As explained in the *DeMaio Declaration*, for most of this case, Plaintiff demanded $1 million for himself (*not* including attorneys' fees and costs). He maintained this position throughout and right up until just before RCCL made its Offer of Judgment. Moreover, he demanded $1 million for himself even though he admitted he had no economic damages and his emotional distress was merely "garden variety." *DeMaio Decl.* ¶¶ 8-21, *Ex.* 2. Measured against that background, the "result obtained" is less than one-third of what Plaintiff demanded for the vast majority of this case. Moreover, the total attorneys' fee award sought ($2,114,190.75) is *more than seven times* the amount Plaintiff recovered—a request vastly disproportionate to the results obtained. *See Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012) (affirming district court's decision to reduce the total fee award by an additional 25%--after already cutting hourly rates by 40% and hours by 20%--because the plaintiff recovered less than 15% of what he sought and the fee request was more than three times the recovery).

**B.  <u>Plaintiff's Requested Compensable Hours Are Not Reasonable</u>**

"Excessive, redundant or otherwise unnecessary hours should be excluded from an attorneys' fee request … irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (*quoted in Barrios*, 2020 WL 7481869, at *2); *see Gustave*, 2021 WL 4244862 at *4. It is also appropriate to exclude hours that are inadequately documented. *Norman*, 836 F.2d at 1301. The fee applicant bears the burden of providing specific and detailed evidence so the court can determine the necessity and reasonableness of the time claimed, and whether time spent on the

same task by multiple timekeepers represents their distinct contributions. *Barnes*, 168 F.3d 423, 427, 432-33; *Hermosilla*, 2011 WL 9364952 at *14 (same).

Exclusions for excessive or unnecessary work on given tasks are committed to the district court's discretion. *Norman*, 836 F.2d at 1301, 1306. As with the determination of hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended without the need for expert testimony. *Gustave*, 2021 WL 4244862 at *4 (citing *Norman*, 836 F.2d at 1303). Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.

As noted earlier, where, as in this case, the number of fee entries and hours claimed is extensive, the Court has the discretion to forego an hour-by-hour review of the billing entries in favor of making a percentage across-the-board reduction. *See, e.g.*, *St. Fleur v. Cty of Ft. Lauderdale*, 149 F. App'x 849, 853-54 (11th Cir. 2005); *Hermosilla*, 2011 WL 9364952 at *16-17. Courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The goal is merely to "*do rough justice, not to achieve auditing perfection*." *Id.* (emphasis added).

Here, Plaintiff is requesting to be compensated for a staggering *4,080.35* hours in a single-plaintiff case that ended prior to trial (3,481.55 hours for OG timekeepers including Leon Friedman, and 598.80 hours for SWA timekeepers). By any measure, the hours are grossly excessive. RCCL has done an hour-by-hour review of Plaintiff's time entries and identified in the spreadsheets marked as *Exhibits 4, 5, 6* and *7* to this Memorandum more than 750 line-item billing entries that should be eliminated for various reasons including but not limited to: excessive billing for the task at hand, duplication of work, billing by senior attorneys for work suited to more junior attorneys or paralegals, block billing and billing that does not sufficiently describe each biller's distinct contribution to the task being performed, billing entries that do not contain descriptions in sufficient detail for the court to determine whether the task was necessary and the hours were reasonable, excessive billing for internal conferences among timekeepers, and billing on matters that were mundane or clerical or did not require the full exercise of an attorney's education and judgment. RCCL submits the Court should substantially reduce the number of hours awarded because the Plaintiff's petition is rife with these infirmities.

Although too numerous to discuss in their entirety because of page limitations, some of the more obvious problems are the following examples drawn from *Exhibits 4 and 5*.

**Depositions and Court Hearings**. The Plaintiff's attorneys double and often triple-billed all of the depositions and court hearings in this case, including the hours involved in preparing for these proceedings. Eleven witnesses were deposed in this case, including the Plaintiff. Because some of the depositions were taken over more than one day, there were actually 13 days of deposition testimony. Plaintiff had three attorneys, including local counsel from SWA, present and billing for seven of those days. Plaintiff had two attorneys present and billing for the remaining six days of depositions. There was no compelling reason to have more than one attorney present for each deposition, and Plaintiff has failed to articulate why having two or three attorneys at each deposition was necessary. *DeMaio Decl.* ¶¶ 22-23, *Ex. 2.* Similarly, there were several court hearings at which the Plaintiff had two or three attorneys in attendance and billing, some live and some by phone. *Id.* ¶ 24. Again, there was no compelling need to have more than one attorney billing for each hearing, and Plaintiff has not articulated why this was necessary or reasonable. *See Barnes*, 168 F.3d at 433 (eliminating time billed for excessive lawyers in a courtroom or conference when fewer would suffice); *Del Rosario v. King & Prince Seafood Corp.*, 2010 WL 11519378, *8 (S.D. Ga. July 15, 2010) (reducing requested fees for the "redundant review of filed documents, the attendance at depositions and hearings by more than one attorney, and the necessity of numerous attorney conferences" caused by the number of attorneys on the case).

**Plaintiff's Motion for Summary Judgment**. The time entries show four OG attorneys (Peratis, Mollica, Ramanenka, and Van Kampen) spent more than 50 hours drafting Plaintiff's Statement of Material Facts in support of Plaintiff's Motion for Summary Judgment, and five OG attorneys (Peratis, Mollica, Ramanenka, Theodoro, and Van Kampen) spent more than 130 hours drafting Plaintiff's Motion for Summary Judgment. *See DeMaio Decl.* ¶¶ 25-27, *Ex. 2.* That totals more than 180 hours, and the total does not include the duplicative hours multiple OG and SWA attorneys spent subsequently on Plaintiff's response to RCCL's Motion for Summary Judgment. To make matters worse, most of these time entries do not describe the work done with sufficient detail to show each person's *distinct* contribution. For example, the time records show that Mr. Mollica spent 46 hours from Dec. 16 to 23, 2019 on the summary judgment motion but his descriptions consist of little more than "Draft motion for summary judgment" and "Research, draft motion for summary judgment brief." *See* ECF 196-2 at pp.17-18. Ms. Ramanenka then billed 19.7 more hours from Jan. 3 to 10, 2020 but her descriptions merely say "Draft motion for summary judgment." *Id.* at pp.18-19. *See Barnes*, 168 F.3d at 433 (hours spent by multiple attorneys drafting

briefs should be excluded from fee award absent a showing of the distinct contribution each made to briefs).[7]

**Jury instructions**. Three OG attorneys (Peratis, Ramanenka, and Theodoro) spent *129.2 hours* to prepare Plaintiff's initial draft of the jury instructions. *See DeMaio Decl.* ¶ 29, *Ex. 2*. This is grossly excessive in light of the availability of the Eleventh Circuit's Pattern Jury Instructions and this Court's express directive in its Order on Trial Instructions for the parties to use the federal and state pattern jury instructions (*see* ECF 52 at 6).[8]

Plaintiff tries to excuse the duplication of effort and excessive billing by making broad, conclusory statements about how each timekeeper contributed to the case. *See, e.g., Peratis Decl.* ¶¶ 92-114 (ECF 196); *Wagner Aff.* ¶¶ 16-34 (ECF 193); but conclusory statements in the movant's fee affidavits that do not specify the division of labor are insufficient to meet the movant's burden. *Barnes*, 168 F.3d at 433. Notably, the Plaintiff seeks a total of 3,681.20 hours for the "merits phase" of the case. By comparison, RCCL's lawyers billed a total of 1,681.4 hours during the merits phase—substantially less than half what the Plaintiff lawyers billed. *DeMaio Decl.* ¶ 7, *Ex. 2*. RCCL submits the hours its defense team billed are far more indicative of a reasonable number of hours on a case of this nature. *See Hermosilla*, 2011 WL 9364952 at *18 (where hours requested exceeded 3,000, Court applied a 50% across-the-board reduction after conducting a sampling of time entries).

---

[7] OG's time records are rife with this pattern of excessive time and vague block-billing descriptions. It occurred again when OG attorneys began researching and writing Plaintiff's opposition to RCCL's summary judgment motion in February 2020. *See Ex. 4* (listing objectionable entries in Feb. 2020). *See Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, No. 10-81157-CIV, 2013 WL 6729648, *2 (S.D. Fla. Aug. 2, 2013) ("[E]ach attorney's contributions must be distinct, and not redundant, in order to merit compensation").

[8] These are merely a few representative examples of Plaintiff's billing records. Another large block of highly questionable hours is the approximately 767 paralegal hours Plaintiff seeks for the case. Fees for paralegal work are recoverable only to the extent the paralegal performs work traditionally done by an attorney. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988); *Caplan v. Mallory*, No. 19-62103-CV-Smith/Valle, 2021 WL 883493, *4 (S.D. Fla. Feb. 26, 2021), *Report & Recommendation adopted*, 2021 WL 879198 (S.D. Fla. March 9, 2021). Here, most of the entries for paralegals do not reflect work traditionally done by an attorney. For example, a random spot-check of OG's billing records for the first two weeks in Feb. 2019 show paralegals Sara Olson and Christopher Alter billed a number of hours on support activities and clerical work; none of the entries reflect work traditionally done by attorneys. *See* ECF 196-2 at p.4.

This is not OG's first episode with excessive billing. For example, in *Williams v. Metro-North RR Co.*, No. 17-cv-03847, 2018 WL 3370678 (S.D.N.Y. June 28, 2018), *Report & Recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 10, 2018), the court found OG "counsel spent an excessive amount of time on this case." *Id.* at *8. In addition to reducing most of the OG timekeeper's hourly rates, *id.*, the court, among other cuts, (1) cut by 75% the time spent on internal conferences and correspondence, *id.* at *10; (2) cut 57 hours of attorney time purportedly to prepare a 29-page complaint, *id.*; (3) reduced the extensive amount of time OG spent on legal research and drafting internal memoranda, *id.* at *11; and (4) found 189 hours spent on the attorney fee petition to be "clearly excessive." *Id.* In total, the Court cut OG's fee request by close to 50% on the merits phase and by 50% on the fee application. *Id.* at *12. *See also Lochren v. Cnty of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming district court's across-the-board reduction in hours because OG "overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel"); *Ansoumana v. Gristede's Op. Corp.*, No. 00-civ-253, 2004 WL 504319, *4 (S.D.N.Y. Jan 7, 2004) ("I agree also that too many O&G lawyers billed for services, and too much time was expended in briefings and meetings of too many people.").

### (1) <u>Overbilling on the fee application.</u>

OG used four attorneys and two paralegals in preparing the fee petition and incurred a clearly excessive 298.6 hours. SWA incurred an additional 39.5 hours for Ms. Wagner on the fee application. OG also brought in yet a *sixth* attorney on the fee application, Leon Friedman, who billed an additional 61.05 hours. All toll, the total hours on the fee application was a stunning 399.15 hours, for a total "fee-for-fees" claim of $161,815. *Compare Williams*, 2018 WL 3370678 at *11 (189 hours on OG fee application "clearly excessive"); *Thompson v. Phar. Corp. of Am., Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (lawyers should not be compensated for turning litigation about fees into "second major litigation"); *Murray v. Mills*, 354 F. Supp.2d 231, 241 (E.D.N.Y. 2005) (even for complex cases, awarding 30 hours for fee application was "generous").

The OG (and, to a lesser extent, SWA) time entries for work on the fee application contain many of the same infirmities as those with respect to the "merits phase." First, they both list entries for work that is not related to preparation of the fee application. *See Exs. 6, 7*. Second, OG's entries (and, to a lesser extent SWA's entries) include excessive billing, block billing, and duplication of

effort with multiple lawyers working on the same task or work product without descriptions showing their distinct contributions. Many of these objectionable entries are listed on RCCL's *Exhibits 6* and *7* to this Memo of Law, and should be disallowed.

OG's engaging Mr. Friedman was also unnecessary and excessive. Mr. Friedman did his own billing separately from OG. *See Friedman Decl.*, ECF 194, 194-1. Plaintiff asserts that engaging Friedman, who has worked on over 20 fee petitions, saved considerable time in preparing this petition. *Pl. Memo.* 3, n.2. That assertion taxes all credulity given the facts and the number of hours (almost 300) incurred by the OG lawyers without Friedman. There was no compelling need to involve Friedman in the fee application because OG has done many fee applications in the past. *See Williams*, 2018 WL 3370678 at *11 (OG's "[i]nvolving five attorneys and two paralegals in the fee application was unnecessary … while Mr. Friedman clearly is highly experienced in fee applications, so too is O&G."); *Ortiz v. Chop't Creative Salad Co.*, 89 F. Supp.3d 573, 597-98 (S.D.N.Y. 2015) (citing numerous, "almost identical" fee applications and memoranda of law OG had made in previous cases, which give OG "the benefit of 'piggybacking off of … previous case[s]," (citation omitted)).

Moreover, if Mr. Friedman is, as claimed, an expert in fee petitions, there should have been no need for him to bill 61 hours on the petition. Included in the 61 hours was work that was unnecessary, including getting up to speed on the case, discussions involving the offer of judgment, numerous hours devoted to legal research (which should have been unnecessary for an expert on fee awards and which duplicated what others were doing), and numerous block-billed entries relating to "work on legal memo." *See Friedman Decl.*, Ex. A (ECF 194-1). The circumstances beg the question: if Mr. Friedman spent 61 hours preparing the fee petition, what did the other four OG attorneys do for almost 300 hours? The Court should disallow all of Mr. Friedman's time.

### (2) The Court should use its discretion and impose a 50% reduction of claimed hours

Rather than engage in an hour-by-hour review of Plaintiff's voluminous time entries, RCCL submits the Court should exercise its discretion and impose a 50% reduction of all hours claimed by Plaintiff. A 50% reduction is justified for several reasons. First, billing records show that there was double, triple, and even higher levels of redundancy on much of the work performed. This means that for many tasks and projects involving three, four, or five or more lawyers, the redundancy rate was substantially higher than 50%. Furthermore, as noted previously, there are

roughly 767 paralegal hours claimed, and a sampling indicates that many if not most are not com-
pensable because they do not appear to involve work traditionally done by an attorney. Against
that backdrop, a 50% reduction is more than fair. *See, e.g.*, *Hermosilla*, 2011 WL 9364952 at *16-
17 (where hours requested by fee applicant exceeded 3,000 Court chose to make an across-the-
board reduction of 50% of hours claimed, based on its sampling of applicant's time entries, after
also making a substantial reduction in the hourly rates); *Williams*, 2018 WL 3370678 at *12 (cut-
ting OG's hourly rates and then cutting hours on merits and fee application by almost 50%); *Mock
v. Bell Helicopter Textron, Inc.*, No. 04-cv-1415, 2010 WL 11506906, *8 (M.D. Fla. June 30,
2010) (cutting hours of senior attorneys by 60% and reducing their rates because of top-heavy
staffing), *Report & Recommendation adopted*, 2010 WL 11506943 (M.D. Fla. Sept. 2, 2010), *va-
cated & remanded on other grounds*, 456 F. App'x 799 (11th Cir. 2012).

Second, the 50% reduction is justified based on the plaintiff's recovery in comparison to
the fees requested. *See Mock,* 456 F. App'x. at 802 (affirming further reduction in requested attor-
ney hours given that plaintiff recovered less than 15% of the $1.7 million in damages sought and
fee request was several times the amount plaintiff recovered).[9] Here, Plaintiff recovered
$300,000—less than one-third the $1 million in damages he demanded throughout this case—and
his attorneys are requesting in fees more than *seven times* Plaintiff's recovery, a number that makes
the *Mock* case pale by comparison.

Finally, a 50% reduction in the hours is consistent with what RCCL was billed by its law-
yers. As noted previously, RCCL lawyers incurred 1,681.4 hours on the merits phase of the case.
By contrast, Plaintiff's counsel during the merits phase billed a total of 3,681.20 hours, more than
double the defense hours. *DeMaio Decl.* ¶ 7, *Ex. 2*. A 50% reduction in the Plaintiff's hours on the
merits would bring those hours on the merits to 1,840.6, which is still 159 hours more than RCCL
counsel billed during the same phase. Moreover, Plaintiff's hours on the fee application, even if
reduced by 50%, would still be 199.57 hours, which by any measure is more than a reasonable
amount of hours for a fee application.

RCCL has attached to this Memorandum as *Exhibit 8* a table showing a suggested fee
award based on the rates suggested by Mr. Turk multiplied by 50% of the hours claimed. The

---

[9] The underlying district court decision in *Mock* makes clear that plaintiff was awarded a judgment
for $225,809 after seeking nearly $1.7 million, and was seeking attorney's fees of $793,251—
more than *three times* plaintiff's recovery. *Mock*, 2010 WL 11506906 at *1.

calculations produce a total fee award for both phases of $639,347.60, broken down as follows: $521,419.50 to OG; $105,720.10 to SWA; and $12,208.00 to Leon Friedman. *See Ex. 8.* RCCL submits that this accomplishes the goal of doing "rough justice." *Fox*, 563 U.S. at 838.

### C.  Plaintiff's Requested Expenses Should be Reduced Significantly

Plaintiff seeks $76,174.67 in expenses ($67,337.08 for OG and $8,837.59 for SWA). This is in addition to the $29,119.09 Plaintiff seeks in his separate Bill of Costs (ECF 191). The request should be denied or reduced significantly because most of the expenses are not reasonable, were not necessary, or because Plaintiff has failed to provide proof for them.

The ADA permits a court to award non-taxable expenses that are reasonable and necessary to the litigation. *See Caplan*, 2021 WL 883493 at *3; *Hermosilla*, 2011 WL 9364952 at *18. It is the movant's burden to prove what the expenses were for and that they were reasonable and necessary to the litigation. S.D. Fla. L.R. 7.3(a)(6) (the movant "*shall ... describe and document with invoices* all … claimed … expenses not taxable under 28 U.S.C. § 1920") (emphasis added); *see Hermosilla*, 2011 WL 9364952 at *19 (denying recovery of litigation expenses where applicant had not demonstrated expenses were necessary to the litigation).

### (1)  The Court should reduce substantially OG's expense requests

OG seeks to recover $67,337.08 in non-taxable costs for expenses including computerized research, document management, expert witnesses, meals, mediation, messenger fees, medical records, deposition transcripts, travel, and vendor services. *See Peratis Decl.*, *Ex. E* (ECF 196-5 at p.2) (OG "Cost Summary" by category). With the exception of the costs for mediation ($3,000), RCCL objects to all of these expenses.[10]

To begin with, none of the expenses OG seeks are "document[ed] with invoices" and "describe[d]" with any particularity as required by Local Rule 7.3(a)(6). Instead, Plaintiff provides only a "Cost Summary" table, *Peratis Decl. Ex. E* (ECF 196-5 at p.2), followed by pages of "Cost Breakdown[s]" for each category. *See* ECF 196-5 at pp.3-20. No invoices are provided and, in most cases, it is impossible to tell from the entries on most of the "Cost Breakdown[s]" precisely what the expense was for and why it was necessary. To make matters worse, OG's moving papers do not even attempt to explain the expenses. The *Peratis Declaration* in support of OG's application, which is *42 pages long* (not counting an additional 12 exhibits), contains only one, threadbare,

---

[10] Even though OG did not properly document the expense for the mediation fees, RCCL is not objecting to its recovery because RCCL paid an equal amount and knows the fee.

conclusory statement about the necessity of the expenses being claimed; it is this: "Counsel's un-reimbursed fees and expenses were necessary to the representation." *Peratis Decl.* ¶ 82 (ECF 196). This is hardly the type of detailed proof sufficient to establish that the expenses claimed were reasonable and necessary. *Hermosilla*, 2011 WL 9364952 at *18-19; S.D. Fla. L.R. 7.3(a)(6).

Plaintiff's failure to comply with the dictates of Local Rule 7.3(a)(6), standing alone, is ground to deny the request for all of costs sought. *See Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CIV-62175-Bloom/Valle, 2017 WL 7411025, *4 (S.D. Fla. Dec. 1, 2017), *Report & Recommendation adopted*, 2017 WL 7411184 (S.D. Fla. Dec. 21, 2017) (denying motion to tax costs with prejudice for failure to comply with Local Rule 7.3). In the event, however, the Court is inclined to award some non-taxable costs notwithstanding Plaintiff's failure to comply with Local Rule 7.3(a), RCCL will also describe further problems with the expenses OG claims in the order in which they appear in the "Cost Breakdown[s]" in *Exhibit E* (ECF 196-5).

**Computerized Research**. Plaintiff seeks $11,066.61 in computerized research costs. Plaintiff provides a listing of the monthly costs of Westlaw and PACER computerized research but the descriptions in the monthly entries are so sparse the reader cannot evaluate what the costs were for, whether they were necessary, and whether the charges were reasonable. *See* ECF 196-5 at pp. 3-5. They plainly do not describe the subject matter of the research, why it was necessary, and how it was used. *See H.C. v. Bradshaw*, 426 F. Supp.3d 1266, 1285-86 (S.D. Fla. 2019) (denying recovery of all online research expenses where movant failed to show how that research was necessary and reasonable).

**Document Management**. These expense entries, totaling $4,506.64, suffer from the same basic problem as the computerized research charges (*see* ECF 196-5 at pp.6-8). There is no explanation from OG as to what these charges are for, leaving the Court without sufficient evidence to conclude the expenses are reasonable and were necessarily incurred for use in this case.

**Expert Fees**. *See* ECF 196-5 at p.9. These appear to be fees, totaling $12,045.82, associated with Plaintiff's psychiatric expert (Dr. Amsel) and Maltese law expert (Dalli Advocates). OG failed, however, to provide invoices from the experts detailing the services provided, time spent on tasks, or anything other than the total charge. As such, Plaintiff's moving papers do not allow the Court to determine if the expert fees were reasonable. *See Kennedy v. Fountains of Boynton Assocs., Ltd.*, No. 16-81902-CIV-Marra/Matthewman, 2017 WL 5957662, at *5 (S.D. Fla. Nov. 6, 2017), *Report and Recommendation approved*, 2017 WL 5956871 (S.D. Fla. Nov. 29, 2017)

(denying request for expert fees in ADA action because plaintiff's application failed to provide, among other things, detail regarding the services provided, time spent on tasks, or anything other than the total charge).[11]

**FedEx**. As with the other expenses Plaintiff seeks to recover, the FedEx charges, all for "overnight" delivery and totaling $1,001.21 (ECF 196-5 at pp.10-11), have no supporting invoices, verification or explanation. They should therefore be disallowed. Moreover, some of the charges appear on their face to be unnecessary and unreasonable. The first four charges, for example, were all for overnight deliveries from April to August of 2018—long before this case was filed in October 2018. Similarly, the last four charges were all for overnight deliveries from April through June of 2021—long after discovery closed, hearings were over, and the need for overnight deliveries presumably had long passed. As for the remaining charges, some occurred during the time frame of depositions or court appearances but Plaintiff has failed to explain what these shipping charges were for, why they were necessary, or why it was necessary to ship "overnight" as opposed to a less-expensive means such as UPS or FedEx ground delivery.

**Meals**. OG seeks $1,131.65 for meals (ECF 196-5 at p.12). Again, no receipts are provided and there is nothing in Plaintiff's moving papers to demonstrate the reasonableness or necessity of the meals. According to the description in the "Cost Breakdown," some of the meal expenses were purportedly for meals during depositions in September and November 2019 in Miami. As discussed previously, however, most of those depositions involved the presence of two attorneys from OG and one from SWA, which was not necessary to the case. Accordingly, these meal costs are inflated because in many cases they involve two OG attorneys. The remaining meal costs involve monthly charges from Grubhub and one charge for meals at a "client meeting" on Sept. 19, 2019. Both the Grubhub and "client meeting" charges have no discernable connection to this case. All of the meal charges should be disallowed because the Plaintiff has failed to provide sufficient information to show the charges were reasonable and necessary to this case.

**Messenger**. As with the FedEx charges, OG's request for $112.54 in courier "Overnight Delivery/Messenger" charges has no supporting invoices, verification or explanation. They should

---

[11] Moreover, there were only two expert reports produced, suggesting there should be two total charges. Yet the Cost Breakdown shows four separate total charges with one, "MAMO TCV," being an entity that is not identified and is not recognizable to RCCL.

be disallowed because Plaintiff has failed to demonstrate what these charges were for, why they were necessary, or why it was necessary to use overnight delivery or courier services.

**Medical Records**. OG seeks recovery of $749.47 for "Medical Records" (ECF 196-5 at p.15). Again, there are no invoices to support or explain the claim. The request for $600 for medical records from "Hauser Clinic" appears unreasonable on its face. These are the progress notes of Plaintiff's psychiatrist Dr. Gerber. They are attached as Exh. 64 to Dr. Gerber's deposition and number 33 pages in total (P000373-P000406). That comes to $18 per page. Plaintiff provides no explanation. Plaintiff also fails to explain the $121.72 charge for medical records from Mayo Clinic or how those records were necessary to this case.

**Transcripts**. OG seeks $26,689.86 in deposition transcript fees (ECF 196-5 at p.16-17). They should be disallowed because these costs are already included among the $28,490.25 in transcript expenses being sought in Plaintiff's Bill of Costs. *See* ECF 191 and 191-1 at pp.1-3.[12]

**Travel and Lodging**. OG seeks reimbursement for $6,136.49 in travel and lodging costs (ECF 196-5 at pp.18-19). Most of these expenses appear to relate to travel and lodging costs in connection with depositions taken in Miami in September and November 2019. As discussed previously in connection with Plaintiff's requested hours, these depositions involved the presence of multiple attorneys for the Plaintiff that were neither reasonable nor necessary to the case. The same applies to the expenses associated with those multiple attorneys. Here, OG seeks airfare, train, cab fare, and hotel lodging for both OG attorneys Peratis and Ramanenka in connection with the depositions. First, none of these expenses should be awarded because it was not necessary for Plaintiff to hire New York attorneys to prosecute his case. There were plenty of attorneys in the Miami area capable of handling his case, *see Turk Aff.* ¶¶ 16, 25, *Ex. 1. See Mock,* 456 F. App'x. at 802 (disallowing as part of attorney's fees outside-market counsel's travel and meal expenses because they would not have been incurred had plaintiff hired local counsel); *Lockwood v. CIS Servs., LLC*, No. 3:16-CIV-965, 2019 WL 2226126, * 23 (M.D. Fla. May 3, 2019) ("court may cut travel expenses if outside-market counsel was unnecessary and the plaintiff would not have incurred travel and meal expenses had the plaintiff hired local counsel").

---

[12] Furthermore, as discussed in RCCL's Response opposing the Bill of Costs, Plaintiff is seeking duplicative deposition recordings, premium packages, and add-on costs that Plaintiff has not even attempted to justify as reasonable and necessary to the case. He also fails to do so here.

Second, even if the Court is inclined to award some costs, it should not grant OG the travel and lodging costs for both attorneys since the presence of two OG attorneys at these depositions was duplicative and unnecessary. *Barnes*, 168 F.3d at 438-39 (travel expenses of out-of-state attorneys for unnecessary appearances not recoverable); *Hermosilla*, 2011 WL 9364952, at *19.[13]

**Vendor Services**. Finally, OG seeks $896.79 in vendor services for "binders" (ECF 196-5 at p.20). As with OG's other charges, there are no invoices and OG fails to explain anywhere why these charges were reasonable and necessarily incurred in the case.

### (2) The Court should reduce SWA's expense requests

SWA seeks to recover $8,837.59 in non-taxable costs. *Wagner Aff.* ¶ 15 (ECF 193). The costs are summarized in *Exhibit C* to the Affidavit of Lindsey Wagner (ECF 193-3). While some of the costs are supported by an invoice allowing the Court to determine or infer whether the expense was necessary and reasonable, most of the costs entries are not so supported. Moreover, neither the *Wagner Affidavit* nor the Plaintiff's Memo of Law explains these costs in a way that would allow the Court to determine that they were reasonable and necessary to the litigation. *See* S.D. Fla. L.R. 7.3(a)(6); *Hermosilla*, 2011 WL 9364952 at *19.

**Copies and FedEx**. First, there are several itemized costs relating to document reproduction and FedEx shipping expenses (*Wagner Aff.*, *Ex. C*, ECF 193-3 at p.1). With the exception of one reproduction entry, none of these entries is supported by an invoice. Moreover, as with the OG expenses, Plaintiff has offered no description or explanation regarding what these expenses were for and why they were necessary. As such, they should be disallowed. *Hermosilla*, 2011 WL 9364952 at *19; *Thompson v. N. Broward Neuro., P.A.*, No. 16-CIV-60240-Bloom/Valle, 2017 WL 7792715, *3-4 (S.D. Fla. July 20, 2017) ("prevailing party cannot make unsubstantiated claims that copies … were necessary) (citing numerous cases denying copying costs where movant failed to provide an explanation for the copies, the number of copies made, or cost per page).[14]

---

[13] Additionally, some of the "travel" costs appear to be solely for the convenience of counsel. There is a $94.08 entry for a "[l]ate night cab" for "H. Jacome" (ECF 196-5 at p.18). There are two similar entries for late night cab fare for a Stephanie Yu, who was working on document production tasks (*id.* at p.19). Plaintiff has failed to demonstrate these charges were necessary and reasonable.

[14] In the case of the one document reproduction cost that *was* documented by an invoice, that invoice shows only that it was a FedEx Office charge on Sept. 10, 2019 for $82.02 (*See* ECF 193-

**Travel**. Second, the bulk of the SWA expenses concern travel and lodging expenses (ECF 193-3 at pp.1-2). They should be disallowed. The travel expenses included three types: airfare, train, and surface transportation (car or car for hire). As discussed earlier in connection with attorneys' fees, all of the depositions or court hearings at which lawyers appeared in person were conducted in Miami—with the exception of two depositions in Houston. Accordingly, there would have been no need for an SWA attorney—as local counsel in South Florida—to incur airfare expenses in connection with the depositions or other proceedings in Miami. Once again, the Plaintiff's moving papers offer no explanation for these airfare charges.

Two of the depositions (Dr. Gerber and Dr. Balick) were taken in Houston in Nov. 2019. Ms. Wagner was physically present for those depositions but her presence was not "necessary" because OG attorney Peratis attended both depositions by videoconference. Ms. Peratis conducted the deposition of Dr. Gerber and neither Ms. Peratis nor Ms. Wagner asked any questions of Dr. Balick, who was deposed by RCCL. Ms. Wagner's presence in Houston may have been convenient and desirable but it was not necessary because Ms. Peratis was also participating remotely. *DeMaio Decl.* ¶ 23, *Ex. 2*. Accordingly, the travel and lodging charges involving the two Houston depositions should be disallowed. *See Barnes*, 168 F.3d at 438-39 (travel expenses of out-of-state attorneys for unnecessary appearances are not recoverable).[15]

The travel charges for train (Brightline) and car or car service should also be disallowed. Again, SWA was local counsel in South Florida. Local travel is generally not billable to a fee-paying client. Plaintiff easily could have found local counsel in Miami, where there would have been no need for train fare or extensive mileage costs. That Plaintiff (or his lead counsel) *chose* counsel located in Palm Beach County was a convenience to the Plaintiff; it was not a necessity for litigating the case. Accordingly, the charges for train and surface transportation, including Ms. Tomasello's mileage and toll charges, should also be disallowed.

There are three entries for hotel lodging and meals (ECF 193-3 at p.1): two relate to proceedings in Miami; the third, at the C. Baldwin-Curio Collection in Houston, relates to the depositions taken in Houston in November 2019. As noted earlier, the Plaintiff had multiple attorneys

---

3 at pp.16-17). The bare invoice, without more, does not allow the Court to determine whether the expense was necessary and reasonable or simply for the convenience of counsel.

[15] The parties deposed a third out-of-state witness, Jennifer Leopold, but she was deposed remotely because of the COVID-19 pandemic and there were no travel costs involved.

in attendance at the depositions and other proceedings in Miami. It was not necessary and reasonable for an SWA attorney to be incurring hotel charges when they are local counsel. It was also not necessary for an SWA attorney to be incurring hotel costs in Houston when Plaintiff's lead OG attorney was attending the Houston depositions via videoconference.

In the end, the only costs listed on the SWA expense summary that clearly can be understood to be reasonable and necessary are the fees of the clerk for *pro hac vice* admission of OG counsel (the ones that are not included in the Bill of Costs) (totaling $350), the charges for medical records from providers (totaling $195.54), and the charges for service of process that were not included in the Bill of Costs (totaling $303.84). As such, SWA's recoverable non-taxable costs should be limited to these items, which total a combined $849.38.[16]

## CONCLUSION

For the foregoing reasons, RCCL respectfully requests the Court deny Plaintiff's Motion for Attorneys' Fees in part and award the amounts suggested by RCCL in this Memorandum--$639,347.60 or less in fees, and $3,849.38 for non-taxable expenses.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
Counsel for Defendant
Two Datran Center
9130 South Dadeland Boulevard, Suite 1625
Miami, Florida 33156
(305) 374-0506
(305) 374-0456 (fax)

s/ David M. DeMaio
David M. DeMaio
 Florida Bar No. 886513
david.demaio@ogletreedeakins.com
Gregory R. Hawran
 Florida Bar No. 55989
gregory.hawran@ogletreedeakins.com
Kelly M. Peña
Florida Bar No. 106575
kelly.pena@ogletreedeakins.com

---

[16] *Exhibit C* to the *Wagner Aff.* also claims the $400 fee for filing this action with the Clerk of this Court. This appears to be an error because the $400 fee is included on Plaintiff's separately filed Bill of Costs. *See* Bill of Costs, ECF 191.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2021, I served this document on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified.

s/ David M. DeMaio

David M. DeMaio

## <u>SERVICE LIST</u>

SAMUEL SCHULTZ v. ROYAL CARIBBEAN CRUISES LTD., ET AL.
United States District Court, Southern District of Florida
CASE NO.: 2018-CIV-24023-TORRES

Cathleen Scott, Esq.
cscott@scottwagnerlaw.com
Lindsey Wagner, Esq.
lwagner@scottwagnerlaw.com
SCOTT WAGNER & ASSOCIATES, P.A.
250 South Central Boulevard
Jupiter Gardens, Suite 104-A
Jupiter, FL 33458
Telephone: 561.653.0008
Facsimile: 561.653.0020

Kathleen Peratis, Esq.
KP@outtengolden.com
Nina R. Frank, Esq.
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: 212.245.1000
Facsimile: 646.509.2071

*Counsel for Plaintiff*

Method of Service: via CM/ECF

David M. DeMaio
david.demaio@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Two Datran Center
9130 South Dadeland Boulevard, Suite 1625
Miami, FL 33156
Telephone:  305.374.0506
Facsimile:  305.374.0456

*Counsel for Defendant RCCL*

49713166.v1-Ogletree